IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.            )<br>)<br>ROBERT C. GERRARD    )<br>) | No. 04 CR 10089 RWZ |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

### I. INTRODUCTION

This indictment charges the defendant Robert C. Gerrard with three counts of wire fraud, 18 U.S.C. § 1343 (Counts 1-3), and one count of conversion of government funds, 18 U.S.C. § 641 (Count 4). All of the charges arise out of his allegedly obtaining social security retirement benefits to which he was not entitled. Indictment, ¶¶ 2, 3.

Although the indictment is skeletal in its allegations, the core of the government's factual case lies in documents the government has provided in automatic discovery. Close scrutiny of the allegations in the four corners of the indictment, as amplified by the undisputed facts contained in the documents provided, reveals that the government's allegations fail to state either of the crimes charged, and hence there is no basis on which a jury could convict Gerrard of these charges. For these reasons, the defendant respectfully urges dismissal of the indictment.

## II. RELIANCE ON UNDISPUTED FACTS PROVIDED IN DISCOVERY

For purposes of a motion to dismiss an indictment for failure to state a crime pursuant to Fed. R. Crim. P. 12(b), all well pleaded facts are taken as true, and if they do not constitute a criminal offense, the indictment should be dismissed. *United States v. South Florida Asphalt Co.*, 329 F.2d 860, 865 (5th Cir. 1964).

Generally, in making this determination, the court limits its consideration to that which appears within the four corners of the indictment. *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988). However, where, as here, the government has provided the defendant with extensive discovery, the court may examine the factual predicate for the indictment. *United States v. Brown*, 925 F.2d 1301, 1304 (10th Cir. 1991) ("it is permissible and may be desirable where the facts are essentially undisputed, for the district court to examine the factual predicate for an indictment to determine whether the elements of the criminal charge can be shown sufficiently for a submissible case."). Furthermore, the federal rules explicitly permit the court to consider factual issues in determining pretrial motions ("[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record"). Fed. R. Crim. P. 12(e). This is simply a codification of the court's power to manage litigation before it. *United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir. 1983). Thus, although the indictment is deficient on its face, this court is not limited to considering facts alleged within the four corners of the indictment, but may also consider other uncontroverted facts.

## III. FACTS AND PROCEDURAL HISTORY

On October 7, 1987, Defendant Robert C. Gerrard's mother died. Death Certificate (Exh. 1 attached hereto). It is undisputed that Mary Gerrard was eligible for and lawfully received

social security retirement benefits before her death, and that some or all of those benefits she received prior to her death were direct deposited by Social Security into a joint savings account she maintained with her son, the defendant Robert Gerrard, at the Watertown Savings Bank. *See* Grand Jury Testimony of Stephen Wells, Special Agent, Social Security Administration, 3/31/04 at p. 4 (social security funds were transferred into joint account on behalf of Mrs. Gerrard before her death). The difficulty, contends the government, is that those monthly checks continued to be direct deposited into the account, and hence received by the defendant, long <u>after</u> his mother died. Exh. 1; Indictment, ¶¶ 2, 3.

But this contention runs smack into the fundamental flaw undermining the sufficiency of this indictment: the government is unable to account for all social security deposits, and any <u>other</u> deposits, into that account during all relevant time frames, and hence does not and cannot allege that the funds withdrawn from the account after Mrs. Gerrard's death represented the social security payments deposited to the account <u>after</u> her death. If the money withdrawn from this account after Mrs. Gerrard's death constituted social security checks deposited <u>before</u> her death, or funds deposited into the account at <u>any</u> time from sources other than social security, then there is no crime. The government's inability to tie the expenditures to such post-death social security payments, and to so allege this link, makes the indictment fatally deficient for failure to state a crime.

The Social Security records provided by the government, Exh. 14, do not begin until January 3, 1997, more than nine years after Mary Gerrard's death.[1] The earliest date for which information from the bank account has been provided is January 10, 1992. *See* Exh. 2. As of that date, the account contained $10,382.28. *Id.* The United States government continued depositing monies into that account on a monthly basis in amounts ranging from $639.00 in 1992 to $812.00 in 2002. *See, e.g.*, January 1992 Statement ($639.00), January 1993 Statement ($655.00), January 1995 Statement ($683.00), January 1998 ACH Payment Display ($742.00), January 2002 Statement ($812.00) (collectively, Exh. 3). The final disbursement from the United States government appears to have occurred on March 1, 2002. *Compare* March, 2002 Statement *with* April, 2002 Statement (together, Exh. 4).

But these social security funds were not the only funds deposited into the account. In addition to interest accrued, there was an $8,000.00 deposit into the account on August 18, 1992, and another deposit of $14,879.58 on September 15, 1992. Statements of September and October, 1992 (Exh. 4).

The five year limitations period began on March 31, 1999. On that date, the account contained $18, 675.00. April, 1999 Statement (Exh. 6). Between then and March 31, 2002, a total of only $7,940.20 was withdrawn from the account. *See* Statements from April, 1999 to April, 2002 (Exh. 5).

---

[1] The defendant has also filed a request for additional discovery, including but not limited to all records of social security payments to Mary Gerrard at <u>any</u> time, and all records of this and any other accounts in which social security funds were deposited on behalf of Mary Gerrard. The defendant respectfully requests leave to supplement this motion upon receipt of such information.

4

## IV. ARGUMENT

A. **Count 4 Should Be Dismissed Because Even If All The Government's Allegations Are True, It Does Not State A Violation Of 18 U.S.C. § 641 (Theft of Government Funds)**

18 U.S.C. § 641 imposes criminal penalties on whoever "embezzles, steals, purloins, or knowingly converts to his use . . . money" of any U.S. agency. The indictment charges the defendant with violating these provisions with respect to all $116,579.00 allegedly deposited into the account at the Watertown Savings Bank after Mrs. Gerrard's death in October, 1987. But it does so without any hint of an allegation that the defendant actually used all or any portion of these funds. In fact, as shown in § III, *supra*, only $7,940.20 was withdrawn from the account during the limitations period; an amount lower than the first known balance in the account ($10,382.28 on 1/10/92), and lower than the total non-social security deposits of $22,879.58 in August and September, 1992.

The law is clear that Mr. Gerrard was under no obligation during his mother's life to use the funds in this bank account for his mother's benefit, even if all the funds came from her social security checks. *E.g.*, *United States v. Howard*, 787 F.Supp. 769, 770-771 (S.D. Ohio, 1992) (defendant who took funds from his mother's checking account, into which her social security benefits were directly deposited, to pay for his own expenses, not guilty of theft of government funds). Thus, the defendant was free to use any funds in the account at the time of his mother's death for his own purposes; they were not "money of the United States."

The government is plagued by the apparent inability to document how much money was in the account as of Mrs. Gerrard's death on October 4, 1987. We know from the death certificate, Exh. 1, that her date of birth was November 11, 1902. That made her just short of 85

years old at the time of her death, which would have entitled her to nearly 21 years of social security benefits (from age 65) up to that point. All of those funds -- and any other funds in the account at the time of her death -- were Mr. Gerrard's, and he was free to use them. *See* account instructions regarding joint account with right of survivorship. Exh. 15.

After Mr. Gerrard's mother died, social security funds did not cease being "money of the United States" upon their transfer into the account Mr. Gerrard shared with his mother. *United States v. Walker*, 536 F.Supp. 805, 808-809 (S.D. Iowa, 1983) (social security benefits automatically deposited into a decedent's bank account "were the property of the United States at the time the defendant took them" out of the account). Consequently, no unlawful conversion occurred at the moment the monies transferred into the account.[2]

The issue then becomes whether those funds that were withdrawn from the account during the limitations period (or before, if allegedly applicable) were Social Security funds that were allegedly unlawfully obtained (i.e. after his mother's death), or whether they were Mr. Gerrard's own money with which he could do as he pleased. Under the circumstances of this case, the government is unable to allege that Mr. Gerrard withdrew Social Security funds (as opposed to his own funds) from the account during the limitations period, or at any other time.

The government has produced no data regarding the account balance as of the date of Mrs. Gerrard's death, but as of the first date for which the government has produced data, the

---

[2] The case of *United States v. Spear*, 734 F.2d 1 (8th Cir. 1984), is instructive. There, as here, the government erroneously continued to deposit social security benefits into one of the defendants' parent's bank account after the parent's death. The United States Court of Appeals for the Eighth Circuit stated that the defendants clearly "were not convicted for fraudulently obtaining the social security benefits which were erroneously deposited into their account, bur rather for dishonestly taking advantage of the error" by spending the funds. *Id.* at 2 (emphasis added). Here, the government is unable to allege that Mr. Gerrard took advantage during the limitations period of the government's error in any way because it cannot show or allege that the funds Mr. Gerrard spent were social security funds deposited after his mother's death.

6

account contained $10,382.28. Exh. 2. To that ,was added $22,879.58 of other funds in August and September of 1992. Exh. 4. Thus, the government is unable to allege that the total amount in the account to which Gerrard was rightfully entitled was anything less than $33,261.86, the sum of these two deposits of other money. During the limitations period only $7,940.20 was expended from the account, Exh. 5, compared to a balance of $18,675.00 in the account at the start of the limitations period. Exh. 6. Consequently, the government is unable to allege that the money withdrawn from the account during the limitations period was not the money that was in the account when his mother died, and the money that was added in the fall of 1992 (or at other times).[3] Because the allegations of Count 4, even if true, cannot constitute a theft or conversion of the social security funds at issue, that count must be dismissed.

### B.  Counts 1 To 3 Should Be Dismissed Because Even If True, They Cannot Make Out A Violation Of 18 U.S.C. § 1343 (Wire Fraud)

Counts 1-3 charge the defendant with violating 18 U.S.C. § 1343 by devising a scheme to defraud the Social Security Administration and for obtaining money or property, i.e. $116,579.00 in social security payments, by means of false and fraudulent pretenses, representations, or promises, and causing the transmission by interstate wire of three specified social security payments into the account at Watertown Savings Bank for the purpose of executing the scheme. "A scheme to defraud must include some false statement, representation, or promise." *McNally*

---

[3] The government may attempt to argue that after certain points in time following Mrs. Gerrard's death, only social security funds were received into the account, and thus any withdrawals or expenditures after that point had to have comprised use of unlawfully obtained social security funds. But if the amount of money which was deposited or transferred into the account at <u>any</u> time from benign sources (i.e. anything <u>other</u> than social security payments after Mrs. Gerrard's death) was greater than the amount withdrawn during the limitations period, then the withdrawn, or used, funds cannot be sufficiently linked to social security payments after Mrs. Gerrard's death. There are simply too many gaps in the factual allegations (and in the evidence) to permit such a link to be alleged, or proved.

7

*v. United States*, 483 U.S. 350, 358-359 (1987) (cited in *In re Lupron Marketing and Sales Practices Litigation*, 295 F.Supp. 148, 165 (D. Mass. 2003). The falsehood must be "material." *U.S. v. Neder*, 527 U.S. 1, 25 (1999).

Here, the government alleges that the defendant obtained $116,579.00 in social security funds "by means of false and fraudulent pretenses, representations, and promises," but fails to allege a single such pretense, representation, or promise, let alone a material one. There is no such allegation because there will be no such evidence. The government simply continued automatically to wire Mrs. Gerrard's monthly social security check into the account. No affirmative false and fraudulent act or statement by the defendant was necessary to continue these payments. They were continued by rote.[4]

This is in marked contrast to cases where a defendant lies to investigators or others, thereby fraudulently concealing the death and falsely misrepresenting the deceased's right to ongoing payments. *See, e.g., Ross v. United States*, 374 F.2d 97, 102 (8th cir. 1967) (defendant endorsed checks, placed deceased parent's name on mailbox, lied regarding disposition of checks, and represented herself as the deceased payee); *In re Alter*, 398 Mass. 153, 154 (Mass. 1983) (bar discipline case arising out of guilty plea for making a false statement for the purpose of obtaining Social Security payments, where defendant had "stated to an employee of the Social Security Administration that [defendant's] mother was alive and residing with him.")."

---

[4] Nor does the government allege any scheme to defraud by omission. "The failure to expressly incorporate the description of the scheme to defraud by omission" makes counts insufficient, and subject to dismissal. *U.S. v. Yejo*, 634 F.Supp. 630, 634 (D.P.R. 1986) (citations omitted).

Mr. Gerrard is also not properly alleged to have caused the government to wire the funds into the account. He made no alleged misrepresentation to the government. He did not allegedly conceal his mother's death from the government. He did not allegedly engage in any scheme or artifice that would violate § 1343. The government does not and cannot allege that he even spent the monies referenced in Counts 1, 2, and 3 of the indictment, or that he spent or used any <u>other</u> social security funds transferred after his mother's death. The allegations make out nothing more than the account serving as a passive recipient of that money. To allege that Mr. Gerrard is guilty of wire fraud requires much more by way of allegation. Thus, the indictment does not state the crime of wire fraud, and Counts 1 through 3 should be dismissed.

## V. **CONCLUSION**

For the reasons stated above, at trial the government simply could not <u>prove</u> that the defendant committed the crimes charged unless it could prove that he used affirmative fraudulent means to unlawfully obtain the funds that were transferred into the account as social security benefits after his mother died, and that he knowingly <u>used</u> those particular funds. Similarly, for the indictment to state a crime against the defendant, it must <u>allege</u> that he obtained such funds by specific fraudulent acts or statements, and that he used or converted those particular funds.

But with the gaping holes that pervade its case, the government can offer no such evidence, or make any such allegations. Based on the skeletal allegations it has made, and the discovery it has furnished, the government is blissfully ignorant, *inter alia*, of the following:

- -- how much in social security benefits Mrs. Gerrard received during the nearly 20 years from her 65th birthday (November 11, 1967) until her death (October 7, 1987);

9

- what portion of these pre-death social security benefits were deposited in the joint account at Watertown Savings Bank, and what portion of them was in the account when she died;

- what activity took place in that account from the time it opened in July, 1980 (Exh. 16) until the first entry in the account we have been provided, January 10, 1992, and particularly what funds were deposited into that account from <u>non</u>-social security sources.

Unable to answer these questions, the government is left to allege that Gerrard "obtained" $116,579.00 in social security funds to which he was not entitled, Indictment, ¶3, and that he stole and knowingly converted such funds to his own use, <u>id.</u>, Count 4. Even assuming that the government can prove that is the amount of social security benefits that were direct deposited into the account after Mrs. Gerrard's death, the mere receipt in the account, without more, does not state a crime under either § 1343 or § 641.

The government cannot prove -- and does not allege -- any particular "false and fraudulent pretenses, representations, and promises" used by the defendant to obtain these funds. Indictment, Counts 1 through 3. Nor does it allege what, if any, portion of the $116,579.00 Gerrard actually knowingly converted to his own use. If any withdrawals from the account during the limitations period were less than the total of "benign" funds available for Gerrard's use that went into the account (e.g. social security funds in the account from <u>before</u> his mother's death, and funds deposited in the account at any time from sources <u>other</u> than social security), then such withdrawals were not withdrawals of illegally obtained social security funds, and were not criminal.

Put another way, the bare allegations in the indictment, standing alone, are not enough to convict the defendant because they do not properly allege that he defrauded the government to

10

illegally obtain social security benefits (Counts 1-3), or that he knowingly converted such payments to his own use (Count 4). To secure a conviction, the government would have to prove more; to state a crime and proceed to trial, the indictment must allege more. Because it does not, the indictment should be dismissed, as it was in *U.S. v. Risk*, 843 F.2d at 1061, "not because the government could not prove its case, but because there was no case to prove."[5]

        Respectfully submitted,

        ROBERT C. GERRARD,
        By his attorneys,

        */s/ Bruce A. Singal*
        Bruce A. Singal, BBO #464420
        Liz Rover Bailey, BBO# 636665
        Donoghue, Barrett & Singal, P.C.
        One Beacon Street
        Boston, MA 02108
        617-720-5090

Dated: August 24, 2004

## CERTIFICATE OF SERVICE

I, Bruce A. Singal, hereby certify that I have caused a copy of the Memorandum of Law in Support of Defendant's Motion to Dismiss the Indictment to be served upon Nadine Pellegrini, Assistant United States Attorney, United States Attorney's Office, One Courthouse Way, Suite 9200, Boston, Massachusetts 02210, by hand delivery this 24th day of August, 2004.

        */s/ Bruce A. Singal*
        Bruce A. Singal

---

[5] Although a dismissal of an indictment due to faulty procedure or technical defects in wording has no preclusive effect on further proceedings, *United States v. Cejas*, 817 F.2d 595, 600 (9th Cir. 1987), such is not the case here. The documents the government produced, which are properly before the court on this motion (*see* Part II, *supra*), reveal that the government's theory of the case can never be proved. Under these circumstances, the dismissal should be with prejudice. *United States v. Kehoe*, 573 F.2d 335, 344 (5th Cir. 1978); *see United States v. Conkins*, 9 F.3d 1377, 1382 (9th Cir. 1993) ("In some circumstances, the dismissal of an indictment may be a ruling on the merits that collaterally estops further prosecution under the same charge.").